UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>JUSTIN SHIELDS,<br>a/k/a "Tubs"<br><br>　　　　　Defendant. | 3:07-CR-30106-01-KES<br><br><br>ORDER DENYING MOTION<br>FOR COMPASSIONATE RELEASE |

Defendant, Justin Shields, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 91. Plaintiff, the United States of America, opposes the motion. Docket 100. For the following reasons, the court denies defendant's motion for compassionate release.

## BACKGROUND

On February 25, 2008, Shields pleaded guilty to kidnapping in violation of 18 U.S.C. §§ 1153 and 1201. Dockets 52, 57. On June 16, 2008, the court sentenced Shields to 360 months in custody and five years of supervised release. Docket 68; Docket 70 at 2-3.

Shields is incarcerated at United States Penitentiary (USP Leavenworth), a medium security facility, in Leavenworth, Kansas. Docket 91 at 2. The total population at USP Leavenworth is 1,512 persons. Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/lvn/ (last visited Feb. 22, 2021). As of February 26, 2021, there are currently 20 active COVID-19 cases between USP Leavenworth's inmates and staff, two inmate deaths have occurred from COVID-19, and 875 inmates and five staff have recovered from

COVID-19. *See BOP: COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited Feb. 26, 2021).

Shields is 45 years old. https://www.bop.gov/inmateloc/ (last visited Feb. 22, 2021). As of March 20, 2020, Shields was 265 pounds and 72 inches tall. Docket 94 at 12, 691. Based on his weight and height, his body mass index (BMI) is 35.9. *See Adult BMI Calculator*, Ctrs. for Disease Control & Prevention, ttps://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Feb. 22, 2021). Shields alleges he contracted COVID-19 within the facility. Docket 91 at 2; Docket 96 at 1. He further asserts that since his diagnosis he has suffered from difficulty breathing, headaches, pain in his kidneys, and has never felt sicker in his life. Docket 91 at 2. He argues USP Leavenworth is facing a major outbreak and the facility cannot provide the medical care that his conditions require, therefore warranting compassionate release. *Id.* at 2-4.

On May 27, 2020 Shields completed an Inmate Request to Staff form, requesting he be considered for compassionate release due to COVID-19. Docket 94 at 955-57. On June 22, 2020, the warden denied Shields' request. *Id.* at 958. Shields appealed the denial and was further denied relief. *Id.* at 953-54. On December 7, 2020, Shields filed a pro se motion with the court for relief under the First Step Act. Docket 91. Shields' counsel subsequently filed a supplement to his pro se motion. Docket 96.

## DISCUSSION

Because sentences are final judgments, a court ordinarily "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C.

2

§ 3582(c). In 2018, Congress passed the First Step Act (FSA). Pub. L. No. 115-391, 132 Stat. 5194 (2018). In pertinent part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants in certain circumstances to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). Such a reduction in sentence must take into consideration the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement, which was adopted before the FSA was passed, requires both "extraordinary and compelling reasons" to warrant a sentence reduction and that the defendant not pose a danger to the safety of others." USSG § 1B1.13(1)-(2) (Nov. 2018). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Shields argues the global COVID-19 crisis along with his health conditions satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 91 at 1-4; Docket 96 at 1, 3-13.

I.     **Administrative Exhaustion**

Previously, only the BOP Director had the authority to bring a compassionate release motion on a defendant's behalf. With the enactment of the FSA, however, Congress has now permitted courts to grant compassionate release on motions filed by defendants "after the defendant has fully exhausted

all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Shields submitted a request for compassionate release due to COVID-19 to the warden that was denied on June 22, 2020. Docket 94 at 955-58. Thereafter, Shields appealed the denial of his request and was again denied. *Id.* at 953-54. The court concludes Shields has satisfied the administrative exhaustion requirement and reviews the matter on the merits.

## II.     Extraordinary and Compelling Reasons

Though section 3582(c)(1)(A)(i) provides for compassionate release upon a showing of "extraordinary and compelling reasons," Congress did not define what constitutes "extraordinary and compelling." *See* 28 U.S.C. § 994(t). Rather, the Sentencing Commission was directed to describe what should be considered extraordinary and compelling reasons and fashion "the criteria to be applied and a list of specific examples." *Id.* As directed, the Sentencing Commission did so by limiting "extraordinary and compelling reasons" to four scenarios. USSG § 1B1.13, comment. n.1(A)-(C). The four scenarios pertain to a defendant's (1) terminal illness, (2) debilitating physical or mental health condition, (3) advanced age and deteriorating health in combination with the amount of time served, and (4) compelling family circumstances. *Id.* A fifth catch-all category also exists for an "extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through

(C)" as determined by the Director of the Bureau of Prisons. USSG § 1B1.13, comment. n.1(D).

The Sentencing Commission's guidance in § 1B1.13 was provided prior to the passage of the FSA amending section 3582(c)(1)(A) and has not been updated because the commission lacks a quorum. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 n.7 (M.D.N.C. 2019) ("As the Sentencing Commission lacks a quorum to amend the U.S. Sentencing Guidelines, it seems unlikely there will be a policy statement applicable to [compassionate-release] motions brought by defendants in the near future."). As a result, district courts including this one have questioned whether the previous policy statement still applies. *See United States v. Rodd*, Criminal No. 13-230, 2019 WL 5623973, at *3 (D. Minn. Oct. 31, 2019); *United States v. Brown*, 4:05-CR-00227-1, 2020 WL 2091802, at *5-6 (S.D. Iowa Apr. 29, 2020); *United States v. Poole*, 4:15-CR-4009-KES, 2020 WL 4673329, at *2 (D.S.D. Aug. 12, 2020).

Because the FSA changed the way a compassionate release motion may be brought, "several district courts have concluded that the discretion vested in the BOP Director under the catch-all provision now belongs coextensively to federal judges." *United States v. Condon,* 458 F. Supp. 3d 1114, 1118 (D.N.D. 2020) (citing *United States v. Fox*, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *Beck*, 425 F. Supp. 3d at 578-80; *United States v. Cantu*, 423 F. Supp. 3d 345, 352-53 (S.D. Tex. 2019)); *see also United States v. Rivernider*, 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020). A fellow court in this district has held that the "court retains its independent authority to consider the full slate of

5

extraordinary and compelling reasons that an imprisoned person might bring[.]" *United States v. Magnuson,* 5:15-cr-50059-JLV, 2020 WL 7318109, at *5 (D.S.D. Dec. 11, 2020) (internal quotations omitted). This uncertainty has not yet been addressed by the Eighth Circuit. *See United States v. Loggins,* 966 F.3d 891, 892 (8th Cir. 2020) ("We need not decide whether the statute supersedes the policy statement in this respect . . . ."); *United States v. Rodd,* 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13.").

It is clear Congress desired to increase the use of compassionate release by allowing defendants to directly petition the sentencing court after exhausting administrative remedies. *See* 132 Stat. at 5239. The statute instructs that the court may reduce a term of imprisonment for "extraordinary and compelling reasons" if "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). This court has assumed the policy statements still apply to compassionate release motions brought under the FSA and utilizes USSG § 1B.13, Application Notes 1(A)-(D) to guide its analysis. *See, e.g., United States v. Dressen,* 4:17-CR-40047-01-KES, 2020 WL 5642313, at *3 (D.S.D. Sept. 22, 2020) *summarily aff'd* (8th Cir. Oct. 9, 2020); *United States v. Adame*, 4:18-CR-40117-05-KES, 2020 WL 7212096, at *3 (D.S.D. Dec. 7, 2020); *United States v. Nyuon,* 4:12-CR-40017-01-KES, 2020 WL 7029873, at *3 (D.S.D. Nov. 30, 2020).

Shields contends the ongoing COVID-19 pandemic in combination with

his health conditions satisfy the "extraordinary and compelling reasons" standard under 18 U.S.C. § 3582(c)(1)(A)(i). Docket 91 at 3-4; Docket 96 at 1. Shields requests relief under the medical conditions category, U.S.S.G. § 1B1.13 comment note 1(A), and the catch-all provision, U.S.S.G. § 1B1.13 comment note 1(D). Docket 96 at 3-13.

Assuming the court's discretion to consider compassionate release is at least as broad as the outdated policy statement of the Sentencing Commission, Shields has failed to show that his reasons for release rise to the level of "extraordinary and compelling" circumstances justifying a reduction in sentence.

### A.   Medical Conditions Category, Note 1(A)

COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. The Centers for Disease Control and Prevention (CDC) has identified the following conditions as ones that *do* pose an increased risk of severe illness from COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, obesity (a BMI of 30 or higher), heart conditions, sickle cell disease, type 2 diabetes, and several others. *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (updated Feb. 22, 2021). The CDC advises that other medical conditions *might* pose an increased risk of severe illness from COVID-19, including moderate to severe asthma, cystic fibrosis, hypertension or high blood pressure, liver disease, being overweight, type 1 diabetes, and several others. *Id.*

7

The court has reviewed the medical records submitted in this case. Shields' medical conditions include obesity, post laminectomy syndrome and cervical disc disorder. Docket 94 at 1, 445, 637; Docket 96 at 1-2. Based on Shields' height and weight, his BMI is 35.9, which is obese. Docket 94 at 12, 691. Shields' obesity is a condition that increases the risk of severe illness from COVID-19. Shields' other medical conditions—post laminectomy syndrome and cervical disc disorder—are not among those identified by the CDC as increasing or potentially increasing the risk of severe illness from COVID-19.

This court has required a more particularized showing of risk and has concluded obesity alone or in combination with other conditions that might increase the risk is not an extraordinary and compelling reason warranting compassionate release in the age of the COVID-19 pandemic. *See, e.g., United States v. Wright*, 4:16-CR-40083-04-KES, Docket 545 (D.S.D. Feb. 4, 2021) (denying compassionate release to defendant with BMI of 35.5 or 33.3, bipolar disorder, asthma, latent tuberculosis infection, and chronic and allergic rhinitis); *Adame*, 2020 WL 7212096, at *4; (denying compassionate release to defendant with BMI of 33.8, asthma, anxiety, and positive case of COVID-19); *United States v. McAbee*, No. 4:14-CR-40027-01-KES, 2020 WL 5231439, at *3 (D.S.D. Sept. 2, 2020) (finding defendant with asthma and a BMI of 30.8 or 31.7 did not establish extraordinary and compelling reasons). Shields' conditions are similar to those where the court has denied compassionate release motions.

Shields argues his prior course of COVID-19 and alleged complications

8

that resulted from the illness should be considered. Docket 91 at 3-4. Shields tested positive for COVID-19 after being exposed on September 3, 2020. Docket 94 at 10. He was considered asymptomatic and placed in quarantine which consisted of monitoring his vitals. *Id.* at 7, 10, 30. His only symptoms included a dry cough and headaches. *Id.* at 17-19. He had no fever. *Id.* On September 21, 2020, Shields was released from quarantine and stated his symptoms were improving at that time. *Id.* at 7.

Because Shields has already had COVID-19, there is little reason for him to be released. Shields claims he currently suffers from complications because of COVID-19. Docket 91 at 2-4. The medical records indicate that on November 25, 2020, Shields claimed he suffered from dysphagia that he attributed to COVID-19. Docket 94 at 6; Docket 95 at 35, 39. But an exam showed he had relatively normal results when he was tested for dysphagia. Docket 95 at 36. The results state: "[t]he cardiac silhouette is normal. Trachea is midline. Mediastinal and hilar contours are unremarkable. Lungs and pleural spaces are clear. Thoracic musculoskeletal structures are age appropriate. Visualized upper abdomen is grossly unremarkable." *Id.*

While much is still unknown about COVID-19, according to the CDC, "[c]ases of reinfection with COVID-19 have been reported, but remain rare." https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (updated Oct. 27, 2020) (last visited Feb. 22, 2021). There is a growing consensus that "people who have had evidence of a prior infection with SARS-CoV-2, the virus that causes COVID-19, appear to have some degree of

9

protection against being reinfected with the virus." *See SARS-CoV-2 Antibodies Can Protect from Reinfection, NCI Study Suggests*, Nat'l Cancer Inst., https://www.cancer.gov/news-events/cancer-currents-blog/2020/coronavirus-antibodies-protect-against-future-infection (dated Dec. 21, 2020) (last visited Feb. 26, 2021); *see also Director's Blog—COVID-19 Reinfection: Study of Healthcare Workers Shows COVID-19 Immunity Lasts Many Months*, Nat'l Inst. Health, https://www/nih.gov/news-events/news-releases/nih--study-finds-people-sars-cov-2-antibodies-may-have-low-risk-future-infection (dated Dec. 8, 2020) (last visited Feb. 11, 2021) (discussing study of England healthcare workers suggesting that "acquired immunity from an initial COVID-19 infection offers protection against reinfection for six months or maybe longer.").

      The court believes Shields' medical conditions are appropriately managed at USP Leavenworth, the facility is engaged in appropriate efforts to protect inmates against the spread of COVID-19, and the facility would act to treat any inmate who does contract COVID-19. The fact that USP Leavenworth had a COVID-19 outbreak does not negate such conclusions. The statistical information for USP Leavenworth demonstrates a widespread COVID-19 outbreak occurred, but it was not devastating. There were two deaths as a result, and 880 inmates including Shields have recovered. This persuades the court that USP Leavenworth has acted appropriately to treat inmates who do contract COVID-19.

Recently, the Bureau of Prisons has implemented a COVID-19 vaccination plan and has begun administering vaccines to inmates and staff. *See "Learn more about vaccinations and view individual facility stats"* hyperlink *BOP: COVID-19 Update,* https://www.bop.gov/coronavirus/ (last visited Feb. 26, 2021). As of February 26, 2021, 56,705 doses have been administered systemwide. *Id.* That number is increasing daily. Though inoculations have not yet started at USP Leavenworth, the BOP advises those inmates who wish to receive the vaccine will have an opportunity to do so, but

> [w]hen an institution receives an allocation of the vaccine, it is first offered to full-time staff at that location, given that staff - who come and go between the facility and the community - present a higher potential vector for COVID-19 transmission. Vaccinating staff protects fellow staff, inmates at the facility, and the community.

*Id.*

It is understandable that Shields is concerned about his health in the age of COVID-19, and the court does not minimize those concerns. Nevertheless, the court concludes Shields' medical conditions coupled with his history of COVID-19 and the present conditions at USP Leavenworth do not clear the high bar necessary to warrant compassionate release for extraordinary and compelling reasons. Furthermore, the court has denied compassionate release motions under circumstances similar to his. *See United States v. Brunston,* 4:18-CR-40145-KES, Docket 68 (D.S.D. May 26, 2020) (denying compassionate release after defendant had confirmed case of COVID-19) *United States v. Odie,* 4:17-CR-40016-01-KES, Docket 214 (D.S.D. Jan. 26,

2021) (denying reconsideration of compassionate release for defendant with confirmed case of mild COVID-19).

### B.     Catch-all Category, Note 1(D)

The catch-all category in Note 1(D) does not result in a different outcome. The catch-all category allows for release if there are extraordinary and compelling reasons other than, or in combination with, those identified in 1(A) through 1(C). USSG § 1B1.13, comment. n.1(D). Even after considering the ongoing COVID-19 pandemic combined with Shields' medical conditions, the court is not convinced that extraordinary and compelling reasons exist to release Shields early from custody.

### III.    Sentencing Factors of § 3553(a)

Although the court need not consider the 3553(a) factors because Shields' circumstances fail to meet the high bar of "extraordinary and compelling reasons" warranting a sentence reduction, such sentencing factors underscore the point.

Shields' conviction stems from kidnapping. The offense involved Shields violently attacking his wife while under the influence of alcohol and narcotics. PSR ¶¶ 10-14. Shields entered her bedroom uninvited and restrained her from leaving. *Id.* ¶ 12. He cut her throat with a knife and continued to stab her until the knife broke. *Id.* ¶ 13. Shields continued to attack his wife, using two other knives and a pool cue to assault her. *Id.* ¶ 14. Afterwards, Shields shoved her in a car and was eventually apprehended by police. *Id.* ¶¶ 16-17. The total offense level was calculated as 42, and Shields had 11 scorable history points

12

resulting in a criminal history category V. *Id.* ¶¶ 39, 50-52. The guideline range for his sentence was 360 months to life in custody. *Id.* ¶ 79. The court sentenced Shields to 360 months. Docket 70 at 2. Shields has served approximately half of his statutory term. Docket 94 at 935.

After careful consideration of his motion and the § 3553(a) factors, the court concludes Shields' sentence of 360 months in custody with five years of supervised release continues to be appropriate for the seriousness of the offense to which he pleaded guilty.

## CONCLUSION

Shields has failed to satisfy the extraordinary and compelling reason standard. Thus, it is

ORDERED that defendant's motion for relief under the First Step Act (Docket 91) is denied.

Dated February 26, 2021.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE