UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JUSTIN SHIELDS,<br><br>Defendant. | 3:07-CR-30106-KES<br><br><br>ORDER DENYING MOTION<br>FOR COMPASSIONATE RELEASE |

Defendant, Justin Shields, filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). *See* Docket 104; Docket 105. Plaintiff, the United States of America, opposes Shields's motion. *See* Docket 109. Shields filed a reply to the United States's response. *See* Docket 110. For the following reasons, Shields's motion for compassionate release is denied.

## BACKGROUND

On November 20, 2007, Shields was indicted on five counts including assault with the intent to murder, assault with a dangerous weapon, assault resulting in serious bodily injury, assaulting a federal officer, and kidnapping. Docket 10 at 1-2. On February 25, 2008, Shields pleaded guilty to kidnapping in violation of 18 U.S.C. §§ 1153 and 1201. Docket 57 at 1. On June 16, 2008, the court sentenced Shields to 360 months in custody. *See* Docket 68; Docket 70 at 1-2. His projected release date is February 27, 2034. Docket 106 at 122; *see also Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited May 28, 2025) (enter BOP register number 11653-073). Shields is currently incarcerated at Greenville

FCI, a medium security correctional facility with an adjacent minimum security satellite camp. *See id.*; *FCI Greenville*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/gre/ (last visited May 30, 2025).

## DISCUSSION

Sentences are final judgments, meaning a court ordinarily "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). The First Step Act (FSA), passed by Congress in 2018, is one small exception to the finality of sentences. Pub. L. No. 115-391, 132 Stat. 5194 (2018). In relevant part, the FSA amends 18 U.S.C. § 3582(c)(1)(A) to permit incarcerated defendants to file motions with the court seeking compassionate release. Compassionate release provides a narrow path for defendants with "extraordinary and compelling reasons" to leave prison early. 18 U.S.C. § 3582(c)(1)(A)(i). A reduction in sentence must consider the 18 U.S.C. § 3553(a) sentencing factors and be consistent with applicable policy statements issued by the Sentencing Commission. 18 U.S.C. § 3582(c)(1)(A). The burden to establish that a sentence reduction is warranted under 18 U.S.C. § 3582(c) rests with the defendant. *See United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

The Sentencing Commission's policy statement on compassionate release requires both "extraordinary and compelling reasons" to warrant a sentence reduction and the defendant not pose a danger to the public. U.S.S.G. § 1B1.13(a)-(b). The policy statement was amended on November 1, 2023, to reflect that a defendant may initiate motions for compassionate release which a Court may, in its own discretion, grant or deny. U.S.S.G. § 1B.13, amend. 814.

Amendment 814 to the Sentencing Commission policy statement also expands the list of extraordinary and compelling reasons justifying compassionate release. *See id.*; *2023 Amendments in Brief*, U.S. Sent'g Comm'n, https://www.ussc.gov/sites/default/files/pdf/amendment-process/amendments-in-brief/AIB_814.pdf (last visited May 28, 2025).

I.  **Administrative Exhaustion**

Prior to the FSA's passage, only the Bureau of Prisons (BOP) Director had the authority to bring a compassionate release motion on a defendant's behalf. 18 U.S.C. § 3582(c)(1)(A) (2002), *amended by* 18 U.S.C. § 3582(c)(1)(A) (2018). With the enactment of the FSA, Congress has permitted courts to grant a motion for a reduction in sentence filed by a defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Shields has included documentation showing he submitted a request to the warden of his correctional facility on March 20, 2024. Docket 104-1 at 8-9. Shields filed his current motion for compassionate release with the court on September 6, 2024. Docket 104. Shields formally requested compassionate release based on medical concerns, harsh conditions, rehabilitation, COVID-19, family circumstances, and disparity between his sentence and the sentences imposed on other defendants convicted of the same crime. *Id.* Shields states that the warden has failed to respond within thirty days, thereby satisfying the exhaustion requirement under 18 U.S.C. § 3582(c)(1)(A). *See*

Docket 105 at 4-5. The United States argues that Shields never filed an additional request since his first request in June 2020. *See* Docket 109 at 3; *see also United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021). But Shields filed a second request directed to the warden on March 20, 2024, which has not been responded to by the warden within thirty days, and thus meets the administrative exhaustion requirement. Docket 104-1 at 8-9. The court will review the merits of Shields's motion.

## II.  Extraordinary and Compelling Reasons

Congress directed the Sentencing Commission to describe what "should be considered extraordinary and compelling reasons" for compassionate release and fashion "the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The Sentencing Commission policy statement, as amended in November of 2023, responded by identifying six categories of "extraordinary and compelling reasons" justifying compassionate release. U.S.S.G. § 1B1.13(b)(1)-(4), amend. 814.[1] The first four categories pertain to a defendant's: (1) medical circumstances; (2) advanced age and deteriorating health in combination with the amount of time served; (3) compelling family

---

[1] Amendment 814 retained much of the language from the prior version of the Sentencing Commission's policy statement, and prior cases inform the court's judgement to the extent they are consistent with the current version of the policy statement. *See* U.S.S.G. § 1B1.13, amend. 814. Before Amendment 814, the court assumed that the factors laid out in the Sentencing Commission's policy statement applied to motions for compassionate release brought by prisoners as well as the Director of the Bureau of Prisons. *See, e.g., United States v. Muhs*, 2021 WL 534517, at *3 (D.S.D. Feb. 12, 2021). Following Amendment 814, the relevant factors now explicitly apply to motions for compassionate release brought by prisoners. *See id.*; U.S.S.G. § 1B1.13(a).

4

circumstances; and (4) victimization by correctional staff while in custody. *Id.* A fifth catch-all category exists for a "circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). The sixth category arises if the defendant has received an usually long sentence, served at least 10 years, and a change in law produces a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion was filed, after considering the individual circumstances of the defendant. U.S.S.G. § 1B1.13(b)(6).

  Rehabilitation of the defendant is not an extraordinary and compelling reason in and of itself but "may be considered in combination with other circumstances in determining whether and to what extent a reduction" in sentence is warranted. U.S.S.G. § 1B1.13(d). An extraordinary and compelling reason need not be unforeseen at the time of sentencing to warrant compassionate release. U.S.S.G. § 1B1.13(e).

  In his motion, Shields lists a variety of circumstances that, taken together, he considers extraordinary and compelling. This includes "his age, length of time served, changes in the law, unusually harsh prison conditions . . . medical issues, programming, rehabilitation," resurgence of COVID-19, and Amendment 821. Docket 104 at 1. Shields later emphasized in his supplement and reply that based on his various medical conditions, Amendment 821's change to sentencing calculations, his unusually long sentence, the catch-all provision of U.S.S.G. 1B1.13(b)(5), and his mother's drastic health situation, he

5

qualifies for compassionate release. *See* Docket 105 at 12-21, 41; *see also* Docket 110 at 3. Thus, the court will consider whether Shields meets the extraordinary and compelling reasons standard under the medical circumstances, compelling family circumstances, catch-all, and unusually long sentence categories. *See* U.S.S.G. § 1B1.13(b)(1), (3), (5)-(6). The court does not consider the categories for victimization by correctional staff nor age of the defendant because Shields does not argue any circumstances that would satisfy these categories. *See* U.S.S.G. § 1B1.13(b)(2), (4).

    **A.**     **Defendants Medical Circumstances**

Shields identifies four medical conditions he argues warrant compassionate release. These include: (1) obesity, (2) gastroesophageal reflux disease (GERD), (3) hypertension, and (4) arthritis due to post lumbar fusion in his lower back. Docket 105 at 12-15; *see also* Docket 104-1 at 8. The record confirms that Shields's medical conditions include hypertension, GERD, arthritis due to post-laminectomy syndrome of his lumbar region, and class one obesity with a BMI of 33.9. Docket 106 at 1, 3, 8, 10; *Adult BMI Calculator*, CDC, https://www.cdc.gov/bmi/adult-calculator/index.html (June 26, 2024); *see also* Docket 106 at 40-42.

The guidelines identify four situations in which the medical circumstances of the defendant constitute an extraordinary and compelling reason for early release. The subcategories of medical circumstances are: first, where the defendant has a terminal illness. U.S.S.G. § 1B1.13(b)(1)(A). Second, where the defendant suffers from a serious physical or mental condition that substantially diminishes the defendant's ability to provide self-care within the

6

correctional facility. U.S.S.G. § 1B1.13(b)(1)(B). Third, where the defendant has a condition that requires long-term or specialized care that is not being provided and without which the defendant's health may seriously deteriorate. U.S.S.G. § 1B1.13(b)(1)(C). Fourth, where the defendant is in a correctional facility at imminent risk of a public health emergency or outbreak of infectious disease, the defendant is especially at risk, and that risk cannot be adequately and timely mitigated. U.S.S.G. § 1B1.13(b)(1)(D).

Shields points to subcategory (C) to prove compassionate release is appropriate.[2] *See* Docket 105 at 12. The United States argues that Shields's medical conditions are not extraordinary and compelling reasons for a sentence reduction under U.S.S.G. § 1B1.13(b)(1)(A)-(C). Docket 109 at 5. The United States also argues that Shields's medical conditions are not serious and are thus manageable within the custodial environment. *Id.* at 3-4. The court will focus its attention on subcategory (C) and briefly address subcategories (A)-(B).

> **1. Long-term or specialized medical care that is not being provided and without which the defendant is at risk of**

---

[2] Shields also argues that the threat of COVID-19 constitutes an extraordinary and compelling reason in light of his medical conditions. *See* Docket 105 at 23-29. Shields previously raised this argument during the height of COVID-19 in his first motion for compassionate release. Docket 91 at 2-5. This court rejected Shields's argument and likewise finds here that this does not constitute an "extraordinary and compelling reason" for his release because the risks associated with COVID-19 are generally less now than before and Shields's medical conditions have not changed to make him substantially more at risk. *See* Docket 102 at 10; *see also The Changing Threat of COVID-19*, CDC, https://www.cdc.gov/ncird/whats-new/changing-threat-covid-19.html (Feb. 23, 2024) ("Hospitalizations and deaths from COVID-19 are decreasing"); *see also Inmate COVID-19 Data*, Federal Bureau of Prisons, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited June 6, 2025) (finding no reported cases or COVID-19 related deaths at FCI Greenville).

### serious deterioration or death

The guidelines define as an extraordinary and compelling reason circumstances where "[t]he defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C). Shields contends that Subsection 1B1.13(b)(1)(C) applies because he claims his various health conditions make it difficult for FCI Greenville to provide medical care to address his health issues. *See* Docket 105 at 12-15.

The record supports that Shields's medical conditions are being appropriately managed while in federal custody. *See generally* Docket 106. He has frequently been able to obtain medical services and have his conditions properly diagnosed and treated. *See id.* Shields has received medication for his hypertension, post-laminectomy syndrome, and GERD. *Id.* at 1, 3. Also, Shields's medical documents indicate that his hypertension and GERD are in "stable good control" and are not increasing in severity. *Id.* at 4.

Shields's level of medical care while in the custody of the BOP seems sufficient to address his needs. This court does not find that the combination of the four medical conditions Shields faces and his medical treatment place him "at risk of serious deterioration in health or death" as required under subcategory (C).[3] These health conditions also do not constitute a terminal

---

[3] Shields cites a variety of cases he claims show that his health conditions constitute an "extraordinary and compelling reason" for release. *See* Docket 105 at 12-15. The court finds that these cases were generally unique to the

8

illness nor indicate that Shields has been unable to engage in self-care and thus do not satisfy categories (A) or (B). *See* Docket 106 at 115-117 (indicating Shields's work assignment in FCI Admission & Orientation Program and his participation in a variety of educational courses while in custody). Thus, the court finds that Shields does not satisfy any of the medical circumstances categories.

### B.  Defendant's Family Circumstances

To justify compassionate release under the family circumstances category, U.S.S.G. § 1B1.13(b)(3) requires that the defendant demonstrate one of the following four categories. First, the death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition. U.S.S.G. § 1B1.13(b)(3)(A). Second, incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. U.S.S.G. § 1B1.13(b)(3)(B). Third, incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent. U.S.S.G. § 1B1.13(b)(3)(C) Fourth, that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving an immediate family member or an individual whose relationship with the defendant is similar in kind to that of

---

circumstances of the COVID-19 pandemic and included more serious health conditions and higher ages than present here. *See, e.g.*, *United States v. McKinstry*, 2023 WL 4082954, at *2-4 (D.S.D. June 20, 2023) (finding defendant aged 75 with "major physical ailments" at high risk for COVID-19 warranted compassionate release).

9

an immediate family member, when the defendant would be the only available caregiver. U.S.S.G. § 1B1.13(b)(3)(D).

Shields argues his mother's serious decline in health due to diabetes and kidney issues is an extraordinary and compelling reason for his release. *See* Docket 104-1 at 8; Docket 110 at 3. Shields's mother, Vicki Lambert, had prior issues with alcohol abuse and had assumed responsibility for Shields and his siblings prior to their grandmother's death from diabetes in 1990. *See* PSR ¶¶ 55-56. Shields indicates that his mother requires dialysis three times a week and has experienced a diabetic coma. Docket 105 at 41. Shields's mother's health issues and decline would best correspond to subcategory (C) where the defendant's parent is incapacitated without any other available caretaker. U.S.S.G. § 1B1.13(b)(3)(C).

The court is sympathetic to the challenging health issues that Shields's mother faces but concludes that Shields has failed to provide enough evidence to show extraordinary and compelling reasons for his release. Under subcategory (C), Shields must be the only person available to care for his mother. *See United States v. Medearis*, 2024 WL 5252488, at *3 (D.S.D. Dec. 31, 2024) ("The availability of any other potential caregiver is enough to preclude compassionate release for extraordinary and compelling reasons under § 1B1.13(b)(3)(C).") While Shields references several times that his mother is experiencing serious health problems, neither Shields nor his mother have provided evidence to support that these health problems render his mother incapacitated. *See* Docket 104-1 at 8; Docket 105 at 41; *see also*

10

Docket 110 at 3. While Shields states that he "would be the only child of hers that is willing and able to take care of her," he provides no further evidence showing that other family members are unable or unwilling. Docket 104-1 at 8; *see also* PSR ¶ 57 (Shield's PSR identifies four full siblings and three maternal half-siblings). In fact, he has indicated that some relatives, teenage nieces, are currently living with his mother and taking care of her, albeit not during school hours. *See* Docket 104-1 at 8. Given the lack of evidence beyond Shields's bare statements, the court does not find that Shields's mother is without any other person to care for her or that she is incapacitated.

### C.  Catch-All Category

The catch-all category allows for compassionate release where "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5). In his filings, Shields raises U.S.S.G. § 1B1.13(b)(5) as an extraordinary and compelling reason for his release. *See* Docket 105 at 20-21. Although Shields's argument is unclear, Shields discusses the prison's "harsh" conditions, COVID-19, and rehabilitation as circumstances which might constitute extraordinary and compelling reasons for his release.[4] *See id.* at 22-33. The court will briefly

---

[4] Shields also argues that "[t]here is a disparity between the sentence the defendant received and the sentence his codefendant received." Docket 105 at 20. But Shields's original offense was committed alone, and there were no codefendants. Thus, the court finds that Shields has not adequately argued this point and will not consider it.

11

address these arguments and any other factors raised by Shields that may fall into the catch-all category.

Shields's claims regarding the threat of COVID-19 do not satisfy the catch-all category. As noted above, Shields's arguments regarding COVID-19 do not satisfy the medical circumstances category. Thus, the threat of COVID-19 is not "similar in gravity" to those circumstances outlined in paragraphs (1)-(4). U.S.S.G. § 1B1.13(b). Further, the court has previously found that a combination of the prison environment, COVID-19, and challenging health conditions do not typically satisfy the catch-all category, especially when the court had already weighed them under the medical circumstances category. *See United States v. Robertson*, 2025 WL 370618, at *6 (D.S.D. Feb. 3, 2025) ("[T]he court previously evaluated these circumstances and their interplay and found Robertson failed to meet the medical circumstances exception. The court's conclusion is the same here.")

Additionally, Shields's claims of staff shortages, frequent lockdowns, and influx of undocumented migrants into the prison system do not satisfy the catch-all category. *See* Docket 105 at 22-23. Such generalized claims do not match the gravity of the typically individualized considerations under U.S.S.G. § 1B1.13(b)(5). *See United States v. Martin*, 2024 WL 1257174, at *5 (D.S.D. Mar. 25, 2024) (finding that defendant must have identified particular risks for severe COVID-19 complications), *aff'd*, *United States v. Martin*, 2024 WL 4562625 (8th Cir. Apr. 19, 2024). Additionally, other courts have found that restrictions incident to the prison environment and quarantine protocols are

12

not typically grounds for compassionate release. *See United States v. Vest*, 754 F. Supp. 3d 829, 838 (W.D. Mo. 2024).

The court also rejects Shields's argument that his rehabilitation and conduct in prison, in combination with other circumstances, satisfies the catch-all category. *See* Docket 105 at 31-33. Shields points to his participation in rehabilitation programs, twelve-year sobriety, ten-year clear conduct record, and roles as a pipe carrier for the Native American community and suicide companion as evidence that he has been rehabilitated. *See id.* at 32-33; *see also* Docket 106 at 106-118 (indicating disciplinary record and participation in courses). Rehabilitation, on its own, cannot satisfy the catch-all category, though it can be considered in tandem with other circumstances to satisfy the catch-all category. *See* U.S.S.G. § 1B1.13(d). This court has found that when other categories have not been met and rehabilitation is isolated from other circumstances, it cannot satisfy the catch-all category. *See United States v. Crow*, 2023 WL 4493500, at *5 (D.S.D. July 12, 2023) (finding medical conditions and family circumstances categories not met leaving rehabilitation as the "sole remaining ground for release"). Other circumstances Shields has raised have been found inadequate to constitute an extraordinary and compelling reason for his release, leaving rehabilitation to stand on its own. Thus, while the court commends Shields for his clear efforts at rehabilitation during his incarceration, it does not find that his efforts satisfy the catch-all category.

**D.     Unusually Long Sentence Category**

13

The unusually long sentence category allows a court to consider a change in law as a circumstance that may present an extraordinary and compelling reason for release. *See* U.S.S.G. § 1B1.13(b)(6). For an amendment to the United States Sentencing Guidelines to qualify as a change in law, it must have been made retroactive. U.S.S.G. § 1B1.13(b)(6). This category has three elements: (1) the defendant has shown a change in law produces a gross disparity between his sentence and the sentence he would likely receive had he been sentenced at the time he filed his motion; (2) the defendant's individualized circumstances support relief; and (3) the defendant's sentence is in fact unusually long and the defendant has served at least 10 years of that sentence. *See id.*; *see also United States v. Chachanko*, 2024 WL 3293619, at *7 (D.S.D. July 2, 2024).

Shields argues that there is a "gross disparity in the sentence that the defendant is serving at the present time, and the sentence which would be imposed if he were resentenced today." Docket 105 at 16-20. Shields, however, does not specifically identify a change in the law demonstrating this gross disparity. *See* Docket 104; Docket 105 at 16-20. Instead, Shields appears to argue that he is eligible for a sentence reduction under Part A to Amendment 821. *See* 105 at 15-16 (discussing Part A of Amendment 821). Part A of Amendment 821 altered how many criminal history points are assigned to a defendant who "committed the instant offense while under any criminal justice sentence, like probation, parole, [or] supervised release." *Amendment 821*, U.S. Sent'g Comm'n, https://www.ussc.gov/guidelines/amendment/821 (last

14

visited June 4, 2025). Shields is ineligible for a sentence reduction under Amendment 821 because he did not receive a two-point enhancement for committing his offense while under a criminal justice sentence. *See generally* PSR. Thus, because Shields has failed to identify a change in law that produces gross disparity in the sentence he received, the court finds that compassionate release is not warranted under U.S.S.G. § 1B1.13(b)(6).

### III.   Sentencing Factors

The § 3553(a) sentencing factors confirm that compassionate release is not warranted. The first factor the court considers is "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Shields was arrested for kidnapping after pursuit by law enforcement. PSR ¶¶ 16-17. The victim of Shields's offense was his wife, who he stabbed twenty-three times prior to and during her kidnapping. *Id.* ¶ 18. Shields was under the influence of alcohol, cocaine, and methamphetamine during his offense. *Id.* ¶¶ 10-11, 24. Shields made telephone calls to the victim after he had been arrested in which he threatened her and her family if she did not testify in his favor and influence her son to do the same. *Id.* ¶ 21; *see also* Docket 78 at 54. The court finds the nature and circumstances of Shields's offense weigh strongly against his motion because Shields's offense was very serious and could have led to the victim's death if not for the timely medical attention she received.

The court also considers the characteristics of the defendant. Shields had an extensive criminal history prior to his current conviction including

assault resulting in serious bodily injury and assault by striking, beating, or wounding. PSR ¶¶ 45-49. Shields committed a variety of infractions shortly after he was incarcerated, including testing positive for opiate use and engaging in a fist fight. Docket 106 at 106-10. Shields had a difficult upbringing and relationship with his family. PSR ¶¶ 55-57. His mother drank often, and his father died when Shields was only five years old. *Id.* Shields has also used a variety of intoxicants throughout his life including alcohol, marijuana, methamphetamine, and cocaine. *Id.* ¶¶ 65-68. Shields is the biological father of two daughters and was a father figure to his stepson. *Id.* ¶¶ 58-60. The court recognizes that Shields has not had an infraction for 10 years and has completed many rehabilitation programs, *see* Docket 106 at 106-14, but Shields's criminal record and past infractions while in custody are not favorable to his motion for compassionate release. Thus, the court finds that Shields's personal characteristics weigh against his motion for compassionate release.

      The next factor the court considers is the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). Shields has served 56.3% of his sentence as of September 17, 2024. Docket 106 at 122. Given the circumstances and seriousness of the offense and the bottom end of the guideline range sentence that Shields received for his crime,[5] the court finds

---

[5] Shields was sentenced to 360 months for his offense. Docket 68 at 2. His guideline range for his offense level of 40 and criminal history category V was

16

that granting Shields's motion for compassionate release would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment.

The remaining § 3553(a) factors do not support a sentence reduction. If the court granted compassionate release, similar conduct in others would not be deterred because Shields's punishment to this point is a little over half of the sentence for his offense and thus is insufficient to act as an effective deterrent. *See* 18 U.S.C. § 3553(a)(2)(B). While the court commends Shields for his rehabilitative efforts while in custody, Shields engaged in a very serious offense when he kidnapped his wife, stabbed her repeatedly, and attempted to assault a law enforcement officer. *See* PSR ¶¶ 12-17. Overall, the court finds the § 3553(a) factors weigh heavily against Shields's motion and confirms that early release from custody is not warranted.

## CONCLUSION

After careful consideration, the court concludes that Shields has failed to satisfy the extraordinary and compelling reason standard under § 3582(c)(1)(A). Thus, it is

---

360 months to life. *Id.*; PSR ¶ 79.

ORDERED that defendant's motion for relief under the First Step Act (Docket 104) is DENIED.

Dated June 16, 2025.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

18